Good morning, Your Honor. Member of the panels, I have never seen this plaque before. This is wonderful. My name is Will Acheson. I'm the plaintiff's and the appellant's in this case. We have a donning and doffing case for you directed procedural issues. We can get to the underlying subject. And, Judge Robinson, I want to start where you started, and that is on the issue of location. Where does this notion that the location of work under the FLSA in some fashion determines or influences compensability come from? It doesn't come from the FLSA. It's not in the Act itself. It was not grafted onto the FLSA in 1947 as a portal act. It is not in the legislative history behind the portal act. It is not in Steinman. It is not in this Court's two prior opinions on donning and doffing, the Boberus and Alberton case, in both of which the Court mentioned the on-site donning and doffing as a factor, an important factor, for compensability, but not the only factor. Where does this notion come from? Other case law under the FLSA? To the contrary, there is a good time case law under the FLSA that holds that work performed at home is just as compensable as work performed on the work site. What's your strongest case on that point, that work performed at home is compensable under the FLSA? I'll give you a nice circuit. Well, that's a good place to start, right? A lever versus Carson City. That is a case that involves the compensability. Was it a donning and doffing case? It's not a donning and doffing case. It is a canine-feared case. There are donning and doffing cases, not in my circuit, but both at Lennon v. City of St. Louis, where district court case holds it. There are a variety of district court cases, but we're all here because we know there's a conflict in district court law. Right. What about the Department of Labor? Where did we get this notion from, Department of Labor? It's not a regulation. Counsel in the prior oral argument referred to a regulation, Section 790C. That is not regulation of the Department of Labor. The Department of Labor has a variety of things, scattered across the CFRs. Some are regulations. Some are what are called interpretive bulletins. The section counseled from the city of Los Angeles voted is an interpretive bulletin. It did not go through the comment and no dispute. But does that mean it's worthless? It does not mean it's worthless, but it means under the standard or the entire range of Chevron deference, Your Honor, it means it is only afforded the value that it receives according to its power. So skid more. Skid more deference. Skid more deference. That's exactly right. And, in fact, in the preface to that series of regulations, which are portal-to-portal regulations, in the preface, the Department of Labor cites skid more. So it's not a formal regulation. And in that 790.8C, you will not even find anything that says that diamond to diamond must be done at the workplace to be compensated. Instead what you find is the same thing this Court did in Alvarez and Valeras, which is if diamond to diamond is done at the work site, it is compensable. Well, let me ask you this, counsel. If we give a skid more deference to the Department of Labor document, do you lose? No. Why not? Because what the Department of Labor has said in the advisory memorandum, to the extent we can discern that, because that's actually quite difficult to discern, if what the Department of Labor has said is the law, it just simply can't be right. And here's why. If I, as an employer, can say to an employee, you may now do this task at home, and by doing that, automatically convert that task into being non-compensable work, I have been given a tremendous latitude. Latitude not found anywhere in the FOA. What is the task, though? I think that's the critical point, is whether or not you're, if you're performing a task that's the work itself, as opposed to preparatory to doing the work. I see a distinction. So when you say that the employer is saying do the task at home, that's different than saying you may prepare to do your work at home. Your Honor, with all respect, the Supreme Court didn't see it that way in Alamance. The Supreme Court decided that Donning and Goffin have case. And that case, and that's why it's so crucial, because it's the circumstances of the case. Because, you know, if anyone could get compensated for getting dressed for work, then there's no distinction among any professions in terms of what's compensable and what's not. You've hit the nail on the head. I've been involved in four of these cases and arguments before various district court judges. I think that's what the concern is. And there's a ready answer to it. One, I confess I haven't been good enough to give to district court judges. The ready answer is this. It's not the activity that's non-compensable. What makes police uniforms and police gear different than, for example, a suggestion in the city of Deep State, a garbage truck truck, is the extent of time it takes to don and drop the uniforms and equipment,  you have a rule that says that small amounts of time are not compensable. That's Dr. Goffin. So if it's all of the time, it's going to be a rare, rare case where donning and goffing of a uniform or a garbage truck driver or a postal worker, to give another example, this one from Jeff Breyer in one of the Donning and Goffin cases, it's going to be a rare example where the amount of time it takes to don and goff clothing and protective safety gear will never exceed the de minimis threshold. This is not a floodgate system. A floodgate system is open. Well, I think probably every, you know, every profession thinks that the uniform they wear and the equipment they carry is indispensable. So I'm not sure that people in that profession would agree with your characterization of the de minimis nature of their roving and disroving. De minimis doesn't refer to the significance of the items. It refers to the amount of time it takes to do that. And, Your Honor. There are variations, drastic variations in terms of the time that it takes to don and goff the equipment. Absolutely. And that's what juries are for, is deciding whether or not something is compensable. I have to resist the temptation up here to talk in broader terms and to ignore the record. Pay attention to the record for just a second. Because we're on some judgment. In effect, that you agree with Judge Patel's determination. Yes. Yes, we think Judge Patel got it absolutely right. Of course we do. The record here, I think, is very telling on this point. We're on summary judgment. Summary judgment was granted against us. You know the significance of that. And the record here, from testimony given by high-ranking commanders of the Mesa Police Department, is that the wearing of the uniform and the equipment separately and together is, and I'm quoting, integral and indispensable to the job of a Mesa police officer, I'm quoting, is necessary to perform the job. How do you transfer that statement to undercover officers? I don't think undercover officers are going to have any claim for donning and doffing of clothing. Do they wear gear? Do they wear protective gear? Yes, they do. They wear a different type of protective gear. They might not make it over the de minimis threshold. It doesn't mean the underlying activity is not potentially compensable, because it could be performed at all. Does it mean that the gear is less critical to an undercover officer? Absolutely not. That's why I say the activity itself is not potentially less compensable. It's just that the amount of time, the de minimis rule again, may not get that undercover officer over the threshold, where with a patrol officer, it may. And, I mean, we obviously don't know. It depends upon the fact. What's troubling here is there's an overriding policy issue that I think is important for this Court to consider. Beyond the MP's case, what is the underlying theory, the underlying principle, behind saying certain types of work, when performed at home, are not compensable, and other types of work, when performed at home, are compensable under the effect? Well, I think we also have to look at the underlying reason for the adoption of the Porter-to-Porter Act. Congress was trying to ring in and give some certainty to employers regarding their, the cost of wages to employees. So trying to, you know, minimize the liability of the employer for work that was performed outside the premises. Totally agree. And Congress had the opportunity at that time, Your Honor, to say anything performed off the work site is not compensable. It didn't. And, in fact, it's in the 61 years, 62 years after the Porter Act, we do have this rich body of case law saying work performed at home is compensable under the FLSA. I gave you canine cases. There are telephone cases where individuals make telephone calls at home. Let me give you that as an example in the context of law enforcement. If the city of Mesa decided tomorrow to tell its homicide detectives, from this point forward, you may make follow-up calls to victims and witnesses at home. Would that work be non-compensable under the FLSA? I think we'd probably all say no, just like I would say to my legal assistant. You may now type these briefs up at home. Would that make it non-compensable? I think we'd all say no. Work, then, is the underlying principle. Well, that's a little different, because that, to me, that's the body of work. And I see that as different. I mean, if you told your legal assistant, you know, sharpening your pencils to get ready to write is compensable, I think, you know, that's where I see the distinction, when you're preparing to work as opposed to engaging in the actual work. That's the difficulty for me in the concept. Let me try to address that in a different way. There are other activities that are preparing for work that are compensable under the FLSA. That potentially could be done at home or not done at home. The clearest example that comes to mind right now is training, where the employee actually isn't performing productive work in the training, excuse me, during a training class, but is being prepared to do her or his job better. The Department of Labor has relied regulations on the issue of training, and courts have held that training performed off the work site is compensable work under the FLSA, conditions on that and the like. But the point is that it's not the location that determines the compensability of the work. But Donovan & Dauphin is a special subset of preparation for work. It's one type of work. Well, maybe it's work and maybe it's not work. That's what we're here to decide. That's right. But actually what that focus is, when you focus on location, you're not focusing on whether it's work or not work. The Supreme Court has said Donovan & Dauphin is work. You have said Donovan & Dauphin is work. In some circumstances. We wouldn't be here unless there was a lack of clarity regarding that issue. That's how I make a living, is a lack of clarity, I'm afraid. But I suggest to you there is no principled basis for carving out this type of work, Donovan & Dauphin, and saying if this type of work and this type of work alone is performed off-site, it's not compensable. You won't find that principled basis in anything written by the Department of Labor. The advisory memorandum, the interpretive bulletins, training manuals, you won't find it anywhere. And you won't find it in the opinions of district court judges who have found that location matters. Do you want to save some time for rebuttal?  All right. Thank you, Your Honor. Well, counsel, the issue is joined. The issue is truly about what is the proper construction of the Portal to Portal Act. I think many of your questions hit the main issue. Could you speak a little louder, please? Many of the questions hit the main issue. Are we talking about war here? Is the interpretation that the Department of Labor has given us, the proper interpretation of the Portal to Portal Act, Well, counsel, what's your response to opposing counsel's observation that the memorandum for the Department of Labor never mentioned the fact that work done outside the premises is per se not compensable? What's your response to that? I think it misstates what the real issue is. What the Portal to Portal Act is focused on is whether something is a preliminary activity of both citizens that was not defined by Congress in whether it was an inerrant act of goodness, but up to the whole important agency that it identifies within the Portal to Portal Act to answer those questions. And so the issue becomes are we talking about something that is preliminary or post-liminary and specifically exempted by the consent of Congress from coverage? Yes. Or are we talking about an activity that in fact is a primary activity or principal activity as determined by the Portal to Portal Act? So what portion of the memo do you think precludes compensation for dominant doffing outside the work location in this case? If you look at it, if you look at the regulations first and foremost, let's not forget that really the regulations themselves should be entitled to deference. Memorandum is a later interpretation, an accurate one but a later one. If we look at the regulations and the Department of Labor identifies what are preliminary and post-liminary activities, they exclude from that certain categories of activities such as showering and putting on and taking off clothes. Only under some circumstances that are unique to certain workplaces will these activities then be under the umbrella of compensation. But that's opposing counsel's argument, that this is one of those circumstances where you have evidence in the record that the top officials say that this uniform is essential to performing the work, that it fits within one of the descriptions in the regulations. Well, I think that it's borne to some extent the confusion about using broad versus specific provisions. If you were talking about the interpretation of the Portal to Portal Act and the importance that the Department of Labor stresses is not as much the location, although it does, it's really the matter of convenience to the officials. What regulations specifically are you relying upon when you're making your point here? Section 79.7. If you look at that paper, which is, you know, one of the sections that is defining the activities or providing definitions of what is preliminary and post-liminary, each of the references that it makes to the congressional drafts emphasizes the issue of convenience to employees. What the determination of where they address is a matter of convenience. It is possible under all four. Did you mean 790? He said 709. I'm sorry. 790. Slides are kicking in, I suppose. But, yes, under that particular regulation, what you will see is the issue of convenience actually coming into view. And that's really what we're talking about. Because the requirement. Yes. You could indulge me this. Let me give you a hypothetical. Let's say we're dealing not with the police, but with, you know, window washers who wash windows on high rises. And the company says if they want, they can put on harnesses in the morning at home. So now a window washer sets up carabiners and safety harnesses and goes to work. Do they get paid for putting on the safety gear? Quite frankly, Judge Gould, I am not familiar with what it would entail to actually don that particular gear. If it was, it's possible that it may be compensable for the act of doing it. I really cannot tell you, under your hypothetical, but I'd love to indulge you. I don't have the facts to be able to make that particular determination. The one thing that I would say is necessary to look into is that, if you use the analogy that counsel is suggesting that we look at convenience as the way to go, we have essentially brought about the very prophecy that Congress is trying to bargain against in passing the Court of Appeals. Congress says that it needed to restrain the definition of poor companies because the excessive definition being used in Tennessee, Poland, and Washington as concrete, would increase litigation and cost employers financial ruin and services and abilities and fall other arms to local states and federal governments. And that's really the situation that we're facing here. The process of this case is making no way in. And changing what has been made no mistake about this, there were 60 years of consistency in this particular case. What the Department of Labor did with a blank slate from Congress was to issue directives and interpretations on how to deal with poor employers. In doing that, they defunded the practice of relying on Congress. I think if you look at the body of federal law in this issue, and verify that Springport was decided before 1947, Chevron was decided after 1947, obviously the Bureau could not have relied on a case that had not yet been decided. But when you look at the analysis that takes place in Chevron, and all of the other Springport cases in this particular issue, whether it's Christensen v. Epps County or Long Island care home, when you have an agency interpreting a blank area of the statute, referred to as the stop-gap or gap-filling regulation, that interpretation is entitled to Chevron. And unless it's apparently wrong, it must be a federal purpose. So are you saying that the 2006 memo is entitled to Chevron deference? I would say to the record that the interpretative bulletin that was issued in 47, immediately after the Portal Act, and by extension, the policy that is embodied in those provisions and restated in the 2006 memo, are entitled to Chevron deference. Absolutely. And if you look at the case that the attorneys that are standing in this issue, which is Christensen v. Harris County, saying that we don't give Chevron deference to these particular issues, I think they should have. In Christensen, the Supreme Court said Chevron applies to an agency interpretation contained in regulation. But don't they have to have undergone the rulemaking procedures that give sort of the supermodel of process or appropriate process? It doesn't have to undergo the APA requirements in order to get Chevron deference. No, it's not an absolute requirement. What case says that we give Chevron deference to interpretative bulletins and memoranda that have not been subjected to the APA notice and rulemaking requirements? If you look at it ñ Give me your strongest one. Well, I would say there has to be a unanimous decision of the Supreme Court in Long Island Fairfax County v. Stoke. And you can also look at Howard v. Robbins. That's a clear example of that. In Howard v. Robbins, for instance, you know, the Court was looking at regulations and said that we would give them Chevron deference. Did you cite the Long Island case in your brief on this issue? I don't ñ I would ñ I don't believe that's necessarily the case. I don't know that we have necessarily cited to it. But that particular decision is Long Island Fairfax County v. Stoke. And ñ Is there one that you did cite in your brief? Sure. Howard v. Robbins, both of which are unanimous Supreme Court decisions. And I think that the issue in this particular case is that, as is referred to in this particular case, in that case, the reason why we didn't give deference because of the DOL is that we can trust the interpretation of the DOL in saying, in your opinion, you do not want to grab that after, for example, formal communication or notice in common rules. Examples. Examples that show that the Department of Labor went out of its way to analyze the pros and cons, which is what did in this case immediately after the clause was passed. But if its memo ñ Counsel. If its memo is not a regulation and doesn't have the force of law in itself, isn't that what the Supreme Court recently said doesn't get Chevron deference and just gets Skidmore deference? I thought that was a basic distinction between a regulation and a memo. Not necessarily, Judge Brewer. I mean, if you look, for instance, in Auer v. Robbins, the position of the Department of Labor was stated in a brief, in an amicus brief, in response to the inquiry of the litigation itself. So sometimes the matter is more about the longevity of the policy itself. It is more about the interpreter, as you stated, of the improper and recent decision-making process, which was implied to be deferred by Congress in this particular instance when it did not apply three of the primary elements of this regulation, preliminary activity, post-preliminary activity, or principle, not which is referenced in the statute. So, Counsel, is your argument that the memo was further clarifying the definition of preliminary and post-preliminary activities that was articulated in the regulations? It either further defines it or clarifies what is a perceived ambiguity of the statute. I think the statute can be construed, I'm sorry, of the 47 books. I think that the interpretation seems clear on its face that if you're looking at what's preliminary and post-preliminary, activities such as money and government are taken out of compensation. And if you are talking about certain circumstances, they can be brought back into primary or principle activities under the subsequent section. But one is using a mandatory language, the other one is using met. So it's possible that you have an interpretation there that may have to be clarified. But one way or the other, they are both consistent. There are 60 years of consistency in this particular area that are going to be unbalanced. The reason I asked you that question was because in our, the court said, because the salary basis test is a creature of the Secretary's own regulations, his interpretation is controlling unless. So how does that language fit in with the memorandum in this case? Well, in this case, the memorandum is also helpful to clarify something that it got, that the Department of Labor spilt in with Congress. But the concept of preliminary and post-preliminary activities was not a creature of the Secretary's regulations, but was part of the statute, right? I agree, but they were not defined in the statute. I mean, you can hardly ask for more of an introduction to rulemaking, to regulation, than saying here's the statute defined in the statute. And I would agree with you if they had actually done the rulemaking, but the problem is that there was no rulemaking, there was just a memo. Again, that is not an absolute requirement for the rule to be given Chevron deference under the Supreme Court case. I agree it is a case, but it's not an absolute requirement. I understand. The other thing that's important to point out is we're trying to draw a distinction here with the location. I think why the location is important is because when it is present, it demonstrates the fact that there is no convenience for the individuals, that at this particular point in time, they are forced to address the premises. And when the court requires this, then they should be compensated for that particular task. But the other items that are compensable when they are not at home, there is no point in suggesting that by switching the location, somehow you remove something from the compensation from there, because if an activity is primary or principal to a child, such as performing the detective department on witnesses from home, that is part of his or her job duties. He is performing them wherever he or she may be located. How do you distinguish this case from the cases finding taking care of police dogs compensable? How do you distinguish this case? An officer who is charged with the care of a canine or a feline, of course, if this is not the case, these individuals have to spend time with the animals. It's part of their job. That's what they're paid to do. So time can be spent. The fact that he is a principal activity of the job, the fact that they're putting on a uniform is not a principal activity of the job. That is simply a delictive activity, that only in the circumstances that are not present here would be called something that is impossible. What about putting on a bulletproof vest? Why isn't that a principal activity? Well, first and foremost, in this particular case, it is discretionary. Even in the case relied on by the WFW in this particular case, that's a rule. It's rules. A vest is not required. This is the case here. So a non-required item cannot be part of compensation. Thank you. All right, thank you. Roberto? Thank you, Your Honor. I want to get back to Steiner, if I could. I want to go back 52 years. Steiner felt that there's no difference, as somebody else said, between compensatory tasks and principal tasks. Steiner felt very clearly that something that's inappropriate and insensible to an employee's job, it's a principal activity. So this division that the city would like it to make between satisfactory and non-satisfactory activity hasn't existed under the law since Steiner. The second thing I wanted to say is counsel mentioned the Long Island v. Coke case. That, like ours, is a Section 213A exemption case, where the statute specifically delegates to the executive labor the ability to make regulations in the area. And I want to quote this by referring to the basics. The basics here are put straightforward. They are that if an activity is inappropriate and insensible to the employee's principal job, it's compensatory. You have said, and there are two texts, and only two texts you have said, for whether something is inappropriate and insensible. Is this necessary for the performance of the job, and does this matter to the employee? All of these are admitted on the facts of this case. Thank you. Thank you. And thank you to both counsel for arguing this in this interesting and challenging case. The case is submitted for decision by the Court, and we are in recess until 9 o'clock a.m. tomorrow morning.
judges: Gould, Rawlinson, George